IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

BRANDIE VARGAS; PAMELA
SMITH; MARA HERRERA,

          Plaintiffs,

      v.

ASANTE ROGUE REGIONAL MEDICAL
CENTER, LLC; ASANTE THREE RIVERS
MEDICAL CENTER, LLC; ASANTE, dba
ASANTE HEALTH SYSTEM,

          Defendants.

Civ. No. 1:23-cv-1722-CL

**ORDER**

AIKEN, District Judge.

This case comes before the Court on Findings and Recommendation ("F&R") filed by Magistrate Judge Mark D. Clarke, ECF No. 44. This case was consolidated with several others "for the limited purpose of allowing the parties to brief motions for summary judgment on the issues of undue hardship and reasonable accommodation." F&R at 1. Judge Clarke recommends that the Court GRANT Defendants' Motion for Summary Judgment, ECF No. 23, and DISMISS the cases with prejudice. For the reasons explained below, the Court ADOPTS Judge Clarke's F&R, ECF No. 44, in full.

Page 1 – ORDER

## LEGAL STANDARDS

Under the Federal Magistrates Act, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate judge's findings and recommendations, "the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."). Although no review is required in the absence of objections, the Magistrates Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Id.* at 150. The Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the court should review the recommendation for "clear error on the face of the record."

## DISCUSSION

Plaintiffs Brandie Vargas, Pamela Smith, and Mara Herrera ("Plaintiffs") are three of numerous plaintiffs in this consolidated summary judgment motion. Plaintiffs bring a religious discrimination failure-to-accommodate claim against Defendants under Title VII, 42 U.S.C. §§ 2000e *et seq.*, and ORS 659A.030. Judge Clarke recommends that the Court grant summary judgment for Defendants on the

Page 2 – ORDER

Title VII claim and on Defendants' evidentiary objections.  Plaintiffs timely filed objections, ECF No. 46, and Defendants responded, ECF No. 47.

I.    *Evidentiary Objections*

    A.    *Exclusion of the French Report*

Defendants move to exclude the French Report as unreliable because "[it is] not based on sufficient facts or data and [is] not the product of reliable principles and methods."  Def. Reply at 12, ECF No. 37.  Plaintiffs object that Judge Clarke reads Federal Rule of Evidence 702 and *Daubert's* gate-keeping requirement too strictly. Pl. Obj. at 7.  Plaintiffs contend that the court improperly accepted Defense counsel's portrayal of Dr. French as a "purveyor of junk science," *id.* at 9, when, instead, Dr. French is a scientist who holds "a minority opinion[,]" *id.* at 10, and "simply . . . challenges the scientific orthodoxy[,]" *id.* at 9.

The French Report does not meet the Rule 702 and *Daubert* admissibility standards.  First, as Judge Clarke explained, Plaintiffs failed to respond in a sur-reply to Defendants' motion to strike the French Report.  F&R at 12.  A district court need not "consider new arguments raised for the first time in an objection to a magistrate judge's findings and recommendation."  *Brown v. Roe*, 279 F.3d 742, 745-46 (9th Cir. 2002).  Even so, Judge Clarke considered the merits of the motion. Second, as, Judge Clarke explained, under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), "the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable."  F&R at 10–11 (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)).  "A district

court cannot be silent about reliability when challenged." *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022). "To carry out its gatekeeping role, a district court must find that an expert's testimony is reliable—an inquiry that focuses not on 'what the experts say,' or their qualifications, 'but what basis they have for saying it.'" *Id.* (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1411, 1316 (9th Cir. 1995)). "[S]omething doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by the scientific method' be deemed conclusive[.]" *Daubert*, 43 F.3d at 1315–16.

In his Report, Dr. French opines that "[t]he medical literature does not support the assertion that the COVID-19 vaccines were effective in preventing infection[,]" P. Janzen Decl., Ex. 1, French Report ¶ 12, ECF No. 44-1, and that "the COVID-19 vaccinations do in fact have adverse complications and do not have a favorable risk/benefit analysis[,]" *id.* ¶ 20. To support his opinion, Dr. French provides six studies, five of which were published after the relevant time period and are thus irrelevant here.[1] *See* French Report, Exs. 2–5, missing Ex. 7, Ex. 8. From these studies, Dr. French misleadingly cites data without context,[2] misinterprets findings

---

[1] "[I]t is appropriate to confine the analysis to the information available to the employer when it made its undue hardship decision." *Lavelle-Hayden v. Legacy Health*, 744 F. Supp. 3d 1135, 1152 (D. Or. 2024).

[2] *E.g.*, "'Out of . . . 469 cases [in a July 2021 Massachusetts COVID-19 outbreak] . . . 74% . . . of them occurred in fully vaccinated persons.'" French Report ¶ 12 (quoting Brown, Catherine M., *Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings—Barnstable County, Massachusetts, July 2021*, 70 MMWR (2021)). Ex. 2, ECF No. 44-1 at 20. Defendants' expert, Dr. Cohen, contends that "[b]ecause vaccination was common [in that particular town], it is unsurprising that fully vaccinated people comprised the majority of COVID cases. This is a well described

that do not in fact support his opinion,[3] and cherry-picks data and random findings to bolster his opinion.[4]   Defendants' expert, Dr. Cohen, attests that Dr. French's "articles and reports [are] of varying quality and scientific merit," Riggs Decl., Ex 1, Cohen Report ¶ 9, ECF No. 38-1, and that even the reputable sources, such as the reports of Exhibits 3 and 4, "are either incorrectly interpreted or selectively

---

phenomenon in epidemiology." Cohen Report ¶ 11. Dr. French asserts that this study shows that "[t]he medical literature does not support the assertion that the COVID-19 vaccines were effective in preventing infection." French Report ¶ 12. But Dr. Cohen points out that Dr. French fails to note that "[t]he article concludes 'Vaccination is the most important strategy to prevent severe illness and death[.]'" Cohen Report ¶ 11 (quoting Brown, Catherine M.).

[3] *E.g.*, "'Vaccination reduces the risk of the delta variant infection and accelerates viral clearance. Nonetheless, fully vaccinated individuals with breakthrough infections have peak viral load similar to unvaccinated cases and can efficiently transmit infection[.]'" French Report ¶ 13 (quoting Singanayagam, Anika et al., *Community Transmission and Viral Load Kinetics of the SARS-CoV-2 Delta (B.1.617.2) Variant in Vaccinated and Unvaccinated Individuals in the UK: A Prospective, Longitudinal, Cohort Study*, 22 Lancet Infectious Diseases 183 (Feb. 2022)). Ex. 3, ECF 44-1 at 28. Dr. Cohen contends that "Dr. French misinterprets these results, which strongly support vaccination among healthcare workers. He simply lifts a concluding sentence to support his opinion, which does not reflect an accurate interpretation of this study." Cohen Report ¶ 14.

[4] *E.g.*, "'Because these viruses [coronaviruses] generally do not elicit complete and durable protective immunity by themselves, they have not to date been effectively controlled by licensed or experimental vaccines.'" French Report ¶ 14 (quoting Morens, David M. et al., *Rethinking Next-Generation Vaccines for Coronaviruses, Influenza viruses, and Other Respiratory Viruses*, 31 *Cell Host & Microbe* 146 (Jan. 11, 2023)). Ex. 4, ECF 44-1 at 41. But Dr. French omitted passages such as: "During the COVID-19 pandemic, the rapid development and deployment of SARS-CoV-2 vaccines has saved innumerable lives and helped to achieve early partial pandemic control. However, as variant SARS-CoV-2 strains have emerged, deficiencies in these vaccines reminiscent of influenza vaccines have become apparent." Dr. Cohen, noting that the senior author is Dr. Anthony Fauci, contends that "[i]t is well known that the current protection afforded by COVID-19 vaccines and those of other respiratory viruses is not life-long." Cohen Report ¶ 15. "The fact that the 'next generation of vaccines' has not yet arrived or that the vaccines do not afford 100% protection is not a viable argument against highly effective contemporary vaccines." *Id.*

Page 5 – ORDER

misquoted" and that Exhibit 2's report "does not illustrate what Dr. French purports it to show." *Id.* ¶ 10.  To determine whether an expert opinion is reliable, a court must determine whether that opinion is supported by "sufficient facts or data," is based on "reliable" methodology, and is "reliably applied to the facts of the case." *United States v. Jimenez-Chaidez*, 96 F.4th 1257, 1269 (9th Cir. 2024) (quoting Fed. R. Evid. 702). Inaccurately characterized facts and data are neither "sufficient facts and data" nor do they reflect reliable methodology.

Remarkably, Dr. French also cites to the Rancourt Study[5] and its "alarming" results for the proposition that the COVID-19 vaccine increases all-cause mortality and is thus ineffective and unsafe.  French Report ¶ 17, Ex. 6, ECF 44-1 at 61.  The Rancourt Study, which collected mortality data after the introduction of the vaccine in 17 countries in the southern hemisphere, has been uniformly criticized by courts across this District for failing to compare the post-vaccine mortality rate to the already elevated (pandemic-related) pre-vaccine mortality rate and for Dr. French's faulty interpretation that the vaccine caused the excess mortality.  *See, e.g.*, *Sano v. PeaceHealth*, No. 6:22-cv-01210-MTK, 2024 WL 4979429, at *4 (D. Or. Dec. 4, 2024) ("The study's methodology is grossly flawed.  It relies on a finding that, 'no excess mortality occur[red] in the pre-vaccination period.'") (citing Rancourt Study at 16); *Parker v. PeaceHealth*, No. 6:23-cv-00450-MTK, 2024 WL 4993472, at *3 ("Dr.

---

[5] Rancourt, D.G. et al., *COVID-19 vaccine-associated mortality in the Southern Hemisphere*, CORRELATION Research in the Public Interest, (Sep. 17, 2023), https://correlation-canada.org/covid-19-vaccine-associated-mortality-in-the-Southern-Hemisphere/.  French Report ¶ 19, Ex. 6, ECF No. 44-1 at 61.

Page 6 – ORDER

French's explanation of the Rancourt Study's scientific legitimacy is cursory and grossly deficient. . . . Having conducted 'a preliminary assessment of whether the reasoning or methodology underlying [the French Report] is scientifically valid,' the Court finds that the Rancourt Study is junk science.") (quoting *Daubert*, 509 U.S. at 592–93).  Dr. Cohen attested that "[the Rancourt Study] is a non-peer reviewed piece from a Canadian corporation" that "has been thoroughly criticized and debunked by the scientific community."  Cohen Report ¶ 19 and n.21 (citing the Denis Rancourt blog).[6]

Finally, Judge Clarke noted that other courts in this district have also determined that Dr. French's reports—similar reports that rely on and inaccurately characterize the same sources and their data, findings, and conclusions—are unreliable. *Id.* at 12–13. *See, e.g.*, *Parker*, 2024 WL 4993472, at *4–5 ("Dr. French's expert opinion is . . . unreliable because he misconstrues the exhibits cited in his report[;]" "[T]he mismatch between Dr. French's opinion and the findings and recommendations of the evidence he relies on, calls into question his capacity to comprehend scientific literature[;]" "Dr. French's interpretation of [his reports] are at best incompetent, and at worst, dishonest.").

Here, Judge Clarke properly determined that because the French Report relies on inaccurately characterized data, scientifically debunked sources, and irrelevant sources, that the French Report is unreliable and thus "fails to satisfy the

---

[6] "There Was No Pandemic," https://denisrancourt.substack.com/p/there-was-no-pandemic (last visited Aug. 24, 2025).

admissibility standards of Rule 702 and *Daubert*." F&R at 14. The Court adopts Judge Clarke's recommendation to exclude the French Report.

B.    *Exclusion of Plaintiffs' Declarations*

Defendants move to exclude the declarations of fifteen plaintiffs (including those of Vargas, Smith, and Herrera) that were filed with Plaintiffs' Response to the summary judgment motion. Def. Reply at 16. *See* C. Janzen Decl., ECF No. 34, Vargas Decl. (Ex. 11, ECF No. 34 at 39–43), Smith Decl. (Ex. 5, ECF No. 34 at 13–14), and Herrera Decl. (Ex. 14, ECF No. 34 at 54–55). Smith and Herrera's declarations are nearly identical. They attest that:

> Asante did not engage in any individualized discussion with me regarding making any accommodations for my religious exception to taking the COVID-19 vaccine. Asante did not discuss with them (sic) any alternative accommodations to keep working for the company other than unpaid leave. They simply granted my religious (sic) exception and put me on unpaid administrative leave indefinitely.

Smith Decl. ¶2; Herrera Decl. ¶ 2. Both Herrera and Vargas attest that Asante hired unvaccinated travel nurses to work in its facilities while they were on unpaid leave. *See* Herrera Decl. ¶ 3; Vargas Decl. ¶ 5. Vargas opines about the quality of Asante's infection control practices, *id.* ¶ 2, her belief that the vaccines "proved to not be as effective as the claims that had been made[,]" *id.* ¶ 9, and offers her advice about superior infection control practices, *id.* ¶¶ 9, 12. She also alleges that the vaccine requirement "was a pretextual explanation to hide [Asante's] religious animus[,]" *id.* ¶ 6, and a strategy to "gain financially" by collecting more COVID relief funds, *id.* ¶ 13.

Page 8 – ORDER

First, Plaintiffs failed to respond in a sur-reply to Defendants' motion to exclude their declarations. F&R at 14–15. Even so, Judge Clarke considered the motion on its merits. He determined that (1) "the declarations fail to support the arguments made by Plaintiffs, and thus are irrelevant to the Court's analysis[,]" F&R at 15, and (2) Plaintiffs' assertion that "Asante hired unvaccinated travel nurses to work there[,]" Herrera Decl. ¶ 3; Vargas Decl. ¶ 5, lacks "supporting facts evidencing any personal knowledge" that Asante in fact hired unvaccinated travel nurses, F&R at 15.

As to the declarations generally, the Court finds, as did Judge Clarke, that Plaintiffs' Response does not rely on, cite to, or discuss any facts from any of the declarations. Instead, Plaintiffs' Response cites to "Declarations by Plaintiffs" as the lone support for the assertion that:

> Defendants admit they did not analyze Plaintiffs' cases individually; instead, they engaged in a sweeping generalization that no unvaccinated individual could be accommodated in the clinical setting or otherwise.

Pl. Resp. at 16, ECF No. 33; F&R at 15. But a "bald assertion that evidence sufficient to raise a triable issue exists somewhere in the record is not sufficient to carry a party's burden in responding to a motion for summary judgment." *Anderson v. Multnomah Cnty.*, No. 3:20-cv-00555-YY, 2024 WL 5361178, at *5 (D. Or. Oct. 4, 2024) (citing *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)).

As to Plaintiffs' travel nurse assertions, "[a]n affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the

Page 9 – ORDER

affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012) ("[D]eclarations not based on personal knowledge are inadmissible and cannot raise a genuine issue of material fact.").

Defendants contend that the declarations cannot be based on personal knowledge because "there is no truth to this claim[.]" Def. Reply at 17; *see also* Payton Decl. ¶ 13, ECF No. 25 ("Effective October 18, 2021, Asante did not allow any workers (including travelers) who were not vaccinated against COVID-19 to continue to work in person.").

Plaintiffs contend that their statements were made with personal knowledge because they made them under oath "and provided specific detail that corroborates their claims." Pl. Obj. at 16. However, Plaintiffs do not provide any specific details about even one travel nurse, or say how they acquired such knowledge; instead, Plaintiffs each provide an identical generic statement.

The Court adopts Judge Clarke's recommendation to exclude Plaintiffs' declarations.

II.    *Motion for Summary Judgment*

Plaintiffs object to Judge Clarke's recommendation to grant summary judgment for Defendants on their Title VII undue hardship affirmative defense. Plaintiffs assert that Judge Clarke erred because (1) there are material fact issues as to potential accommodations, Pl. Obj. at 20–22, and (2) Defendants failed to meet the required undue hardship showing, Pl. Obj. at 16.

Page 10 – ORDER

A.    *Material Fact Issues*

Defendants assert that, for patient care providers like Plaintiffs with jobs that could not be performed remotely, "any accommodation other than leave would have been an undue hardship." Def. Mot. at 16. Plaintiffs object that the following material fact issues preclude summary judgment on that defense: (1) whether unvaccinated employees "would have led to a direct threat to safety[,]" Pl. Obj. at 20; (2) whether "*these* [unvaccinated] *Plaintiffs* would have posed a direct threat to the health of the community[,]" *id.* at 20–21 (emphasis in original); (3) whether unvaccinated employees "would have had any effect on their coworkers[,]" *id.* at 21–22; (4) whether vaccination reduces or prevents transmission risks to co-workers, *id.* at 22; and (5) "whether Plaintiffs could have effectively prevented the transmission of COVID-19 [by masking or testing] that would have been just as effective at preventing the spread of COVID-19 as vaccination[,]" *id.* at 22.

The Court disagrees that those facts are in dispute; they are not. "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

Page 11 – ORDER

Here, Defendants' experts, Dr. Cohen and Dr. Ghosh, offer expert opinions, based on then current medical and scientific evidence that "the only safe and reasonable accommodation for . . . employees with approved exceptions who could not work remotely was leave." Ghosh Decl. ¶ 32, ECF No. 24.

Plaintiffs provide no evidence to dispute the following material facts, on which Defendants relied to make its accommodation decisions: (1) the severity and magnitude of the COVID-19 pandemic in Oregon, including the surge of morbidity and mortality that occurred during the 2021 appearance of the Delta strain, "the deadliest and most transmissible variant of COVID-19 to date[,]" and the "dire" 2021 COVID-19 forecasts, Ghosh Decl. ¶¶ 12–17, 23, Ex. 6 (CDC 70 Morb. Mortal. Wkly. Rep. ("MMWR") 1044 (Jul. 30, 2021)); Ex. 3 (OHSU, *COVID Forecast* (Aug. 26, 2021)); (2) the "devastating" impact of the Delta surge on Asante's overflowing hospitals to which the Oregon National Guard was dispatched to help with "everything from janitorial work to administering COVID-19 tests[,]" Ghosh Decl. ¶¶ 13–14; (3) the increased risks of infection and transmission by unvaccinated individuals compared with vaccinated individuals, Ghosh Decl. ¶ 21, Ex. 4 (Stephen J.W. Evans & Nicholas P. Jewell, *Vaccine Effectiveness Studies in the Field*, 385 NEJM 650 (Aug. 2, 2021) and ¶ 22, Ex. 5 (CDC, *Improving communications around vaccine breakthrough and vaccine effectiveness*, (Jul. 29, 2021)); (4) the increased risk of severe symptoms and death among unvaccinated individuals compared with vaccinated individuals, *id.*; (5) that the vaccine was safe and highly effective at preventing transmission, hospitalization, and death, Ghosh Decl. ¶¶ 25, 21, Ex. 7 (CDC, *Benefits of Getting a*

*COVID-19 Vaccine* (Aug. 16, 2021)); Ex. 8 (CDC, 70 MMWR 1344 (Sep. 24, 2021));

Cohen Report ¶ 13 (citing Stephen M. Kissler et al., *Viral Dynamics of SARS-CoV-2 Variants in Vaccinated and Unvaccinated Persons*, 385 NEJM 2489 (Dec. 23, 2021));

(6) that the CDC recommended that healthcare employers "[c]onsider vaccine mandates for [healthcare providers] to protect [the] vulnerable populations" prevalent in healthcare settings like Asante's, Ghosh Decl. ¶ 22, Ex. 5; (7) that vulnerable people at Asante's facilities included "children and elderly patients and patients with underlying conditions that make them particularly susceptible to COVID-19 . . . and patients [who] could not be vaccinated[,]" *id.* ¶ 20.

Dr. Ghosh also attested that, based on the available medical data, "vaccination was the single most important method" of protection against COVID-19, *id.* ¶ 32; that masking, testing, and distancing were insufficient alone because they "were already the 'baseline' requirements, do not provide continuous protection 24 hours per day, and are susceptible to human error[,]" *id.* at 33; that "[t]o be effective, PPE must be worn constantly and appropriately[]" and that "[i]nside healthcare facilities, transmission can occur in breakrooms where people are less likely to be wearing, or consistently wearing, PPE[,]" *id.*; that, as to testing, "by the time an individual tests positive, they have often been contagious for 48 hours prior to the test[]" and "[t]he costs of testing a large volume of unvaccinated employees were . . . significant[,]" *id.* ¶ 34; that "[f]or anyone involved in direct patient care or contact, physical distancing is simply not practicable, if not impossible[,]" *id.*; and, that, unlike other preventive measures, "vaccination not only protects against acquiring and transmitting the

Page 13 – ORDER

virus, it also . . . reduces the likelihood that an infected individual is contagious or will develop serious illness or death if they do contract the virus[,]" *id.* ¶ 35.

Judge Clarke noted that, in response to the 2021 COVID-19 surge, OHA issued a temporary rule, *former* OAR 333-019-1010, eff. Aug 5. 2021 to Aug. 24, 2021, that required healthcare workers to either be fully vaccinated or submit to weekly testing, and that 20 days later, OHA replaced that rule with an updated version, *former* OAR 333-019-1010, eff. Aug. 25, 2021 to June 30, 2023, that "remove[d] the testing option and require[d] all healthcare workers to be fully vaccinated or have a medical or religious exception in place by October 18, 2021." F&R at 7. Judge Clarke concluded that "OHA's decision . . . to add an additional vaccination requirement for healthcare workers, on top of existing masking and other requirements, strongly indicates that those existing measures alone were no longer sufficient to protect healthcare workers and patients." *Id.* at 20. Defendants' accommodations policy not only aligned with the current medical science, but it also complied with the law.

As to Plaintiffs, during the relevant timeframe, Vargas worked as a Certified Nursing Assistant ("CNA") "in the Short Stay Unit at Asante Rogue Regional Medical Center ("ARRMC") in Medford, Oregon. Payton Decl. ¶ 28(a). In her role as CNA, she provided direct patient care (involving close physical contact) under RN supervision, *id.* Her job description included:

> promot[ing] patient safety and comfort by providing for activities of daily living, assisting with feeding patients . . . , ambulating, turning, and positioning patients, providing fresh water, nourishment between meals, providing patients' personal hygiene by giving perineal care, baths, helping with showers, oral care, assisting with travel to and from

Page 14 – ORDER

the bathroom or bedside commode, bedpans, urinals, and briefs every shift and as needed throughout the shift.

*Id.* Payton Decl., Ex. 8-A, Vargas Job Description, ECF No. 25-2 at 37. Vargas admitted that she could not perform 100% of her job duties remotely. Riggs Decl. ¶¶ 7, 8; Ex. 11, First RFA #2, ECF No. 26-1 at 73 (untimely but deemed admitted under Fed. R. Civ. P. 36(a)(3)).

During the relevant timeframe, Smith worked as a Physical Therapist at ARRMC. Payton Decl. ¶ 29(a). In her role as physical therapist, Smith provided direct patient care involving close physical contact. *Id.* Smith's duties included "diagnosing [her patient's] issues, helping with their rehabilitation, providing lymphatic draining massages, and taping/bandaging patients as necessary[.]" *Id.* "[Her] job also required direct contact with various other types of workers and visitors in the hospital." *Id.*; *also see* Payton Decl., Ex. 9-A, Smith Job Description, ECF No. 25-2 at 42. Smith admitted that she could not perform 100% of her job duties remotely. Riggs Decl. ¶¶ 7, 8; Ex. 11, First RFA #2, ECF No. 26-1 at 73 (untimely but deemed admitted under Fed. R. Civ. P. 36(a)(3)).

Also during the relevant timeframe, Herrera worked as a Scheduling Assistant at Asante Three Rivers Medical Center in Grants Pass, Oregon. Payton Decl. ¶ 39(a). In her role as a scheduling assistant, "Herrera was responsible for creating time schedules for staff, processing accrued paid time off . . . requests, and preparing reports for leadership on staffing needs." *Id.* Her job "required her to work in person" and to have "direct contact with various other types of workers and visitors in the hospital." *Id.; see also* Payton Decl., Ex. 13-A, Hererra Job Description, ECF No. 25-

Page 15 – ORDER

2 at 62. Hererra admitted that she could not perform 100% of her job duties remotely. Riggs Decl. ¶¶ 7, 8; Ex. 11, First RFA #2, ECF No. 26-1 at 73 (untimely but deemed admitted under Fed. R. Civ. P. 36(a)(3)).

In sum, Plaintiffs offer no rebuttal to Defendants' expert opinion that accommodating unvaccinated employees in Defendants' hospital system would have increased the risk of COVID-19 transmission, morbidity, and mortality. Plaintiffs also do not dispute that they could not have performed 100% of their jobs remotely.

B.    *Undue Hardship Standard*

Plaintiffs object to the F&R on the ground that Defendants failed to meet the undue hardship standard under *Groff v. DeJoy*, 600 U.S. 447, 470 (2023). Pl. Obj. at 17–19.

Title VII and its Oregon analogue provide a two-step analysis for failure to accommodate claims. Once a plaintiff has made a *prima facie* case, the burden shifts to the defendant to show that it "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1224 (9th Cir. 2023) (internal citation and quotation marks omitted). Defendants contend that even assuming that Plaintiffs establish a *prima facie* failure-to-accommodate claim, that they could not reasonably accommodate Plaintiffs without undue hardship and that unpaid leave was the only reasonable accommodation. Def. Mot. at 16.

Page 16 – ORDER

Relying on *Groff v. DeJoy*, 600 U.S. 447, 470 (2023), Plaintiffs object that Defendants failed to show that any other "accommodation would result in substantial increased costs in relation to the conduct of its particular business." Pl. Obj. at 17–18. Plaintiffs seek to confine *Groff's* "costs" to direct monetary costs. But Plaintiffs misread *Groff*. *Groff* directed courts to "resolve whether a hardship would be substantial in the context of an employer's business in [a] common-sense manner" and to "take[] into account all relevant factors . . . including the particular accommodations at issue and their practical impact in light of the nature, size[,] and operating cost of [an] employer." *Groff*, 600 U.S. at 470–71.

Specific to the COVID-19 context, pre-*Groff* EEOC guidance provides that accommodation "[c]osts to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business including, in this instance, the risk of the spread of COVID-19 to other employees or to the public[.]" F&R at 19 (citing EEOC Guidance).[7] *Groff* did not displace EEOC guidance. *See Groff*, 600 U.S. at 471 ("[A] good deal of the EEOC's guidance [as to undue hardship] is sensible and will . . . be unaffected by our clarifying decision[.]"). As Judge Clarke explained, "courts in this District have determined that the EEOC provides sensible and relevant guidance consistent with *Groff*." F&R at 19. *See, e.g.*, *Lavelle-Hayden*, 744 F. Supp. 3d. 1135, 1151 (D. Or. 2024) ("Consistent with the pre- and post-*Groff*

---

[7] WHAT YOU SHOULD KNOW ABOUT COVID-19 AND THE ADA, THE REHABILITATION ACT, AND OTHER EEO LAWS, § L.3 (updated Mar. 1, 2022), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last visited Aug. 24, 2025) ("EEOC Guidance").

Page 17 – ORDER

authority, this Court holds that it is appropriate to consider not only calculable economic costs but also non-economic costs, like the cost to an employer's mission and potential safety risks, in analyzing undue hardship.").

In the COVID-19 vaccination context, the Ninth Circuit recently held that relevant undue hardship factors under *Groff* include: (1) "health and safety costs[,]" which the court analyzed as health and safety *risks* to the plaintiffs' coworkers and to the public they served; (2) the employer's "operational burden," including increased absenteeism, scheduling disruption, and the inability to respond to emergencies; (3) and the employer's "financial costs." *Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211, 1220 (9th Cir. 2025) (affirming summary judgment for the employer on its undue hardship defense to unvaccinated firefighters' Title VII failure-to-accommodate claims); *see also Groff*, 600 U.S. at 475 (Sotomayor, J., concurring) ("Because the 'conduct of [a] business' plainly includes the management and performance of the business's employees, undue hardship on the conduct of a business may include undue hardship on the business's employees. . . . Indeed, for many businesses, labor is more important to the conduct of the business than any other factor."); *Bordeaux v. Lions Gate Ent., Inc.*, 703 F. Supp. 3d 1117, 1134, 1136 (C.D. Cal. 2023), *aff'd*, No. 23-4340, 2025 WL 655065 (9th Cir. Feb. 28, 2025) ("Numerous courts have found the possibility of an unvaccinated individual getting others sick to be a non-speculative risk that a court may consider when performing an undue hardship analysis.") (collecting cases); *Melino v. Bos. Med. Ctr.*, 127 F.4th 391, 397 (1st Cir. 2025) ("permitting [a registered nurse] to work unvaccinated would pose an

Page 18 – ORDER

undue hardship 'by increasing the risk of COVID-19 transmission amongst staff and patients'"); *Hall v. Sheppard Pratt Health Sys., Inc.*, 155 F.4th 747, 754–55 (4th Cir. 2025) (holding that "[a]llowing over two hundred religious-exemption claimants to remain unvaccinated would have unacceptably increased the risk of COVID-19 transmissions and outbreaks" and constituted undue hardship, but also noting that "[i]t is likely that granting even [a] single religious exemption would have constituted an undue hardship for the hospital system.").

To evaluate undue hardship under Title VII, courts in this district consider: (1) the information available at the time the defendant made its accommodation decision; (2) economic and non-economic costs of the accommodation; and (3) the cumulative or aggregate effects of an accommodation requested by numerous, similarly situated employees. *Lavelle-Hayden*, 744 F. Supp. 3d. at 1151–52. Judge Clarke set out extensive findings as to each factor and concluded that accommodating Plaintiffs would have imposed a substantial health and safety risk to a vulnerable patient population and to staff, F&R at 20–21, substantial administrative or operational burden, *id.* at 22–23, and increased financial costs, *id.* at 22–24.

As to the third factor, the cumulative or aggregate effects of accommodating numerous similarly situated employees, Judge Clarke noted that from "August 2021 through September 2022, Asante received a combined total of 1,009 religious and medical accommodation requests, of which it ultimately approved 807 (approximately 13% of its workforce)." F&R at 22 (citing Payton Decl. ¶ 9). Asante testified that the "unprecedented flood of requests . . . placed an incredible strain on an already

Page 19 – ORDER

exhausted staff to cover shifts and hire and train contract healthcare workers[,]" Payton Decl. ¶ 9, and that "the only safe and reasonable accommodation for the hundreds of unvaccinated employees with approved exceptions who could not work remotely was leave, effective October 18, 2021[,]" *id.* ¶ 11.

Plaintiffs object that Defendants failed to conduct an individualized undue hardship analysis for each of them. But Plaintiffs fail to rebut the scientific and medical evidence used by Defendants to determine that allowing unvaccinated employees to work in person, regardless of other mitigation method, would pose substantial health and safety risks to staff and medically vulnerable patients. Once Asante made the determination that "the only safe and reasonable accommodation for the hundreds of unvaccinated employees with approved exceptions who could not work remotely was leave," the only remaining question was whether each Plaintiff could perform 100% of their essential job functions remotely. Asante undertook that individualized determination as to each Plaintiff. Plaintiffs do not dispute that they could not perform 100% of their essential job functions remotely.

In sum, Plaintiffs fail to rebut the evidence that accommodating unvaccinated healthcare workers such as Plaintiffs who could not perform 100% of their jobs remotely would have imposed a substantial cost in the context of Defendants' business. Defendants are thus entitled to summary judgment as to their undue hardship defense to Plaintiffs' Title VII religious discrimination claims.

Page 20 – ORDER

## CONCLUSION

For the reasons explained above, the F&R, ECF No. 44, is ADOPTED in full. Defendants' Motion for Summary Judgment, ECF No. 23, is GRANTED, and Plaintiffs' claims are DISMISSED with prejudice.  Final judgment shall be entered accordingly.

It is so ORDERED and DATED this 18th day of March 2026.


/s/Ann Aiken
ANN AIKEN
United States District Judge